This is a workers' compensation case.
In January 1994, Benjamin Reed filed a complaint, alleging that he was injured on November 10, 1992, while working in the line and scope of his employment with James R. Fincher Timber Company, Inc. (Fincher Timber). Reed further alleged that he was permanently disabled as a result of this accident. Ultimately, the parties stipulated to the date of the injury, the medical expenses paid, Reed's average weekly wages, the amount of temporary total disability benefits paid until November 1993, and that Reed was injured in the line and scope of his employment. Thus, the only issue before the trial court was whether Reed had suffered a permanent total disability or a permanent partial disability.
In September 1994, following ore tenus proceedings, the trial court awarded Reed permanent partial disability benefits, finding that he had "suffered a substantial, but not total disability, and had sustained a 70% decrease in earning capacity as a result of the subject accident." Reed appeals.
The two issues Reed raises are: (1) whether there is substantial evidence to support the trial court's finding that Reed sustained only a permanent partial disability rather than a permanent total disability, and (2) whether the trial court erred in failing to consider Reed's age, his level of education, and his experience in determining a post-injury wage earning capacity.
Reed testified that he was employed as a manual laborer with Fincher Timber on the day of his injury. He testified that he was injured when he and others were cutting a *Page 662 
tree and it fell on him. Reed suffered multiple injuries, including fractures of the spine. After approximately two weeks in intensive care, Reed was transferred to other facilities for therapy and rehabilitation.
Reed testified that he quit school at age 17, completed the 7th grade, and performed manual labor jobs before entering the military service. Reed testified that he was assigned a 40% disability or impairment rating by the Veterans Administration (VA) for injuries he received in Vietnam, and that he receives lifetime disability payments of approximately $498 per month for those injuries. After leaving the military service and completing rehabilitation for those injuries, Reed performed manual labor jobs in the construction and timber industries, until this injury. Reed testified that before this injury, he averaged working 10 hours daily, either 5 or 6 days each week, and that his military injuries did not prevent him from performing strenuous work.
Reed testified that since this injury, he has had pain, back problems, mobility problems, and a "weak leg," and that he walks with a cane. He further testified that he had not possessed a valid driver's license for quite a while because of 10 DUI convictions, but that relatives and neighbors had provided his transportation to work. On cross-examination, however, Reed admitted that he usually did not require medication during the day, that he did not have any problems with walking, and that on a scale of 1 to 10, with 1 being practically no discomfort, he rated his pain as ranging from 2 to 4. Evidence also revealed that Reed walked with a limp before this work-related injury.
Reed's treating physician, Dr. James L. Perrien, testified by deposition that although Reed had reached maximum medical improvement, he will continue to improve in other ways, and that his pain may resolve with time. Dr. Perrien testified that Reed was taking only one type of medication and that a work capacities evaluation suggested that Reed could do sedentary work.
Bill Vinson, Reed's vocational expert, testified that Reed was illiterate and had no transferable skills. Vinson further testified that Reed was unemployable because of his serious physical limitations and his limitations relating to his rural residential area and his dependency on others for transportation. He further testified that nothing in Reed's work history had prepared Reed for sedentary work, which was, according to Vinson, probably all that Reed could do. Vinson testified that Reed's intellect limited him to unskilled sedentary jobs and that Reed had lost access to approximately 99% of all jobs.
Sharon Phillips, an occupational therapist familiar with Reed's case, testified that Reed could perform sedentary work in a position that would permit frequent changes in positions from sitting to standing.
John Sellars, a vocational consultant, testified that he had reviewed information regarding Reed, including medical records, notes, and depositions, and that he had interviewed Reed. Sellars testified that Reed indicated no motivation or ability to overcome his problems. Sellars testified that, in his opinion, Reed was not 100% permanently and totally disabled, that he could perform sedentary work, and that he had assigned Reed a disability or vocational impairment rating of 69.5%. While Sellars admitted that it would be difficult to place Reed in a job, he testified that there were sedentary-type jobs in Reed's geographical area that he could perform, particularly in the timber industry, because he lived in a heavy timber industry area. Sellars further stated that although Reed's physician had stated that Reed could still work, Reed perceived himself as totally disabled. He further testified that Reed's lifestyle and self-defeating or self-destructive behaviors, including drinking and heavy smoking, were not conducive to a good motivation.
Both parties submitted trial briefs, with Reed arguing that he suffered a permanent total disability, and Fincher Timber arguing that Reed suffered only a permanent partial disability. Fincher Timber also contended that the trial court should deduct the VA's 40% disability rating from the determination of disability and award Reed a 29.5% disability.
The review of this case is governed by the new Workers' Compensation Act: "In *Page 663 
reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). This court has restated that standard as follows:
 "We will view the facts in the light most favorable to the findings of the trial court. The trial court's judgment will not be reversed unless it is clear that the trial court's findings are manifestly contrary to the evidence as contained in the record as a whole or unless it is clear that fairminded persons in the exercise of impartial judgment would adopt a contrary conclusion."
Whitsett v. BAMSI, Inc., 652 So.2d 287, 290
(Ala.Civ.App. 1994). We note, however, that "[t]he new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012,1014 (Ala.Civ.App. 1995).
Reed first argues that no legal evidence supports the trial court's finding of a 70% decrease in earning capacity, specifically arguing that Fincher Timber failed to provide any evidence indicating that Reed could return to any reasonable form of gainful employment. Reed, as "the plaintiff in a workmen's compensation case has the burden of proving, by credible evidence, all elements of his case." Armstrong v.Lewis Associates Construction Co., 469 So.2d 605, 607
(Ala.Civ.App. 1984). Reed further argues that the trial court inadvertently considered his 40% pre-existing military impairment rating as a basis for refusing to award him 100% permanent total disability.
Fincher Timber presented testimony and evidence from Reed's treating physician, his occupational therapist, and a vocational expert, indicating that Reed was capable of performing some type of work. Reed presented the opinion testimony of a vocational expert, whose motivation for testifying and whose qualifications were questioned extensively. Reed failed to present credible evidence to prove his case, or to overcome the evidence presented by Fincher Timber. The trial court is free to choose which evidence it believes, and when conflicting evidence is presented, the findings of the trial court, which has the duty to resolve the conflicts, are conclusive, if supported by the evidence.Acustar, Inc. v. Staples, 598 So.2d 943 (Ala.Civ.App. 1992);Seifert v. Houlditch, 583 So.2d 274 (Ala.Civ.App. 1991). The trial court is not bound by expert opinions in workers' compensation cases, even if those opinions are uncontroverted. The trial court is free to consider all of the evidence, "as well as its own observations of the witnesses. The trial court may then interpret what it has heard and observed, according to its own best judgment." Gibson v. Southern Stone Co.,518 So.2d 730, 731 (Ala.Civ.App. 1987); see also Armstrong v. Lewis Associates Construction Co., 469 So.2d 605
(Ala.Civ.App. 1984). It is the trial court's duty to determine the extent or percentage of disability based on all the evidence before it and its own observations. Genpak Corp. v. Gibson, 534 So.2d 312
(Ala.Civ.App. 1988). There is substantial evidence supporting the trial court's finding regarding the extent of Reed's disability, and its findings are not manifestly contrary to the evidence.
Reed's argument that the trial court erroneously considered his pre-existing disability rating of 40% to reduce his award from permanent total to permanent partial disability is unpersuasive. Fincher Timber argued at trial that Reed's pre-existing 40% disability determination should be deducted from a determination of disability for this work-related injury, because the pre-existing injury increased or prolonged his work-related injury, and Fincher Timber further asserted that Reed was entitled only to an award of a 29.5% disability for this injury. The trial court, however, clearly rejected Fincher Timber's argument, because it found a 70% decrease in earning capacity. If the trial court had considered Fincher Timber's assertion in its determination of disability, the most it could have awarded was a 60% decrease in earning capacity. The trial court's restatement in its findings that Reed received a 40% impairment rating and monthly disability payments was, at most, harmless error. Rule 45, A.R.App.P.
Furthermore, nothing in the record indicates that the trial court erroneously considered this in its determination. In fact, the trial court's order states: *Page 664 
 "A great deal of the evidence concerning the extent of [Reed's] disability is in dispute. The Court has considered the live testimony and weighed the credibility of the witnesses . . . as well as the deposition testimony of Dr. James Perrien. Based upon all of the evidence, the Court finds that [Reed] has suffered a substantial, but not total disability, and has sustained a 70% decrease in earning capacity as a result of the subject accident."
Reed has failed to reveal any error in this regard.
Reed's final argument is that the trial court should have considered his age, his work experience, and his education level in determining his post-injury wage earning capacity. While we agree that these are proper factors for a court to consider in determining a percentage of loss of earning capacity, our review of the record does not reveal that the trial court failed to consider these factors. In fact, the trial court's order specifically refers to Reed's age, his educational level, and his prior work experience, and a simple reading of the trial court's order indicates clearly that it considered these factors.
Additionally, Reed cites cases that he deems similar, where plaintiffs were awarded permanent total disability. Our review of those cases discloses that in each case there was ample evidence supporting the award of permanent total disability. There are also many cases where the evidence dictates a lesser award. Each workers' compensation case is reviewed on its own merits to determine whether the evidence supports the judgment. We are mindful that the Workers' Compensation Act must be liberally construed to accomplish its beneficent purposes; however, in this case, record evidence does not warrant disturbing the trial court's judgment. There is substantial evidence supporting the trial court's findings, and its judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE and CRAWLEY, JJ., concur.